IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY BRAXTON,                  :                                    | |
|     Plaintiff,                                    :                                   | |
|                                                       :                                   | |
| v.                                                 :                                   | CIVIL ACTION NO. 25-CV-540 |
|                                                       :                                   | |
| FEDERAL DETENTION CENTER   :                                    | |
| PHILADELPHIA,                         :                                    | |
|     Defendant.                                  :                                    | |

MEMORANDUM

YOUNGE, J.                                                                                                             APRIL 28, 2025

      Plaintiff Anthony Braxton, an inmate incarcerated at FDC Philadelphia ("FDCP"), has filed this *pro se* civil rights action asserting claims against FDCP. Braxton seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Braxton leave to proceed *in forma pauperis* and dismiss his Complaint.

**I.     FACTUAL ALLEGATIONS**[1]

      Braxton's Complaint ("Compl.") alleges that he was transferred to FDCP on December 19, 2024, from the "D.C. jail."[2] (Compl. at 1.) He asserts that he was confined in the Special Housing Unit ("SHU") from January 3 to January 8, 2025, "because an officer found contraband

---

[1] Braxton filed a two-page handwritten letter titled "Civil Complaint" to assert his claims. (ECF No. 1.) The Court considers the submission to constitute his Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Complaint. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up. The Court may also consider matters of public record when conducting a screening under § 1915. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[2] A review of the publicly available docket for Braxton's criminal proceeding reflects that he was found guilty by a jury of assault with intent to kill while armed, kidnapping, and other charges following a trial in April 2023 in the District of Columbia Superior Court and was sentenced to a term of incarceration of twenty-two and half years. *United States v. Braxton*, No. 2017 CF1 018884 (D.C. Super. Ct.).

1

in [his] cell partner's locker." (*Id*.) Approximately "$47 dollars and some change worth in commissary was taken from [his] locker," which he assumes was taken by the staff after he was sent to the SHU. (*Id*.) The property was "never returned" to him. (*Id*.) He alleges that while he was in the SHU "staff came to [his] cell and pretended as if" he and his cell partner were fighting and maced them. (*Id*.) After he was checked by a nurse, he had to "sit in a holding cell for twenty to thirty minutes while handcuffed and then was released back to population." (*Id*.) He consulted with his case manager, Ms. Colon, about safety issues but claims that she has "refused to address these issues." (*Id*.) He further alleges that he "submitted request forms to the Assistant Warden as well as a Mr. Tossle concerning these issues, but they also have refused to respond." (*Id*.)

Braxton also raises claims pertaining to his conditions of confinement at the FDCP. (*Id*. at 1-2.) On January 17, 2025, he asserts that staff took the cushion out of his mattress because "it was tampered with when [he] received it and had very little cushion on it." (*Id*. at 1.) Now he is "forced to sleep on practically metal." (*Id*.) He further alleges that on January 20, 2025, an officer put his "lunch tray on the ground outside [his] door around mice before feeding [him]." (*Id*. at 1-2.) He asserts claims for "assault, cruel and unusual punishment, negligence, and loss of property," (*id*. at 2), and states that he is in "fear of [his] immediate safety." (*Id*. at 1.) He requests money damages in the amount of $200,000.00. (*Id.* at 2.)

## II.   STANDARD OF REVIEW

The Court grants Braxton leave to proceed *in forma pauperis*.[3]   Accordingly, 28 U.S.C. §

---

[3] In response to a prior Order (ECF No. 3), directing Braxton to pay the filing fee for this case or submit an application to proceed *in forma pauperis* and a copy of his institutional account statement, Braxton submitted a motion asserting that he is unable to obtain his statement. The Court deems Braxton's response to be substantial compliance with the Court's Order. Because

1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Braxton is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III. DISCUSSION

The Court understands Braxton to be attempting to assert *Bivens* claims. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name."). The basis for asserting a constitutional claim against a federal official is *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971) (holding that a remedy is available for a federal agent's violation of a citizen's Fourth Amendment right to be free from warrantless searches and

---

Braxton is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

seizures).  However, the availability of *Bivens* as a cause of action is limited, and the United States Supreme Court "has plainly counseled against creating new *Bivens* causes of action." *Vanderklok v. United States*, 868 F.3d 189, 199 n.8 (3d Cir. 2017); *see also Hernandez v. Mesa*, 589 U.S. 93, 101 (2020) (stating that the "expansion of *Bivens* is a disfavored judicial activity," that "it is doubtful" that the outcome of *Bivens* would be the same if it were decided today, and that "for almost 40 years, [the Supreme Court] ha[s] consistently rebuffed requests to add to the claims allowed under *Bivens*." (internal quotations marks and citations omitted)).  Since *Bivens* was decided in 1971, the Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses." *Vanderklok*, 868 F.3d at 200.  The Supreme Court has recognized an implied private action against federal officials in only three cases: (1) *Bivens* itself – a claim under the Fourth Amendment against Federal Bureau of Investigation agents for handcuffing a man in his own home without a warrant, *id*. 403 U.S. at 389; (2) a claim under the Fifth Amendment against a Congressman for firing his female secretary, *Davis v. Passman*, 442 U.S. 228 (1979); and, (3) a claim under the Eighth Amendment against prison officials for failure to treat an inmate's asthma, *Carlson v. Green*, 446 U.S. 14 (1980).

Because expanding *Bivens* is "a 'disfavored' judicial activity," *see Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017), a "rigorous inquiry . . . must be undertaken before implying a *Bivens* cause of action in a new context or against a new category of defendants." *Vanderklok*, 868 F.3d at 200.  The "rigorous inquiry" has two steps.  A court must first determine whether the case presents a "new *Bivens* context." *Abbasi*, 582 U.S. at 139-40.  "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is

4

new." *Id.* "Differing in a 'meaningful way,' in the very least, means 'an extension' of the *Bivens* remedy, even if just a 'modest extension.'" *Jacobs v. Alam*, 915 F.3d 1028, 1037 (6th Cir. 2019) (quoting *Abbasi*, 582 U.S. at 147 ("[E]ven a modest extension is still an extension.")); *see also Hernandez*, 589 U.S. at 102 ("[O]ur understanding of a 'new context' is broad." (citation omitted)). The Supreme Court noted that meaningful differences may include:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 582 U.S. at 139-40.

In a recent decision, the United States Court of Appeals for the Third Circuit has abrogated earlier decisions recognizing that its own extensions of *Bivens* were no longer tenable given recent Supreme Court decisions. *See Fisher*, 115 F.4th at 197 (holding that the Supreme Court decision in *Egbert v. Boule*, 596 U.S. 482 (2022) "seriously undermines the rationale of *Bistrian* [*v. Levi*, 912 F.3d 79, 94 (3d Cir. 2018)] and *Shorter*[, 12 F.4th at 374]"). In another recent decision, the Third Circuit expressly refused to extend *Bivens* to Eighth Amendment conditions of confinement claims brought by federally convicted prisoners. *Kalu v. Spaulding*, 113 F.4th 311, 340 (3d Cir. 2024).

If the context is new, courts proceed to the second step of the inquiry, and "ask whether any 'special factors counsel[ ] hesitation' in permitting the extension." *Bistrian*, 912 F.3d at 90 (quoting *Abbasi*, 582 U.S. at 136) (alteration in original). Central to the special factors analysis are "separation-of-powers principles" under which the provision of a new damages remedy should often be committed to Congress. *Abbasi*, 582 U.S. at 134-35; *Hernandez*, 589 U.S. at 102. Among the special factors that courts have relied upon are "the existence of an alternative

5

remedial structure," which "may by itself 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Bistrian*, 912 F.3d at 90 (quoting *Abbasi*, 582 U.S. at 137). Other special factors may include "the potential cost to the government of recognizing a private cause of action, both financially and administratively; whether the judiciary is well suited to weigh those costs; the necessity to deter future violations; . . . whether a claim addresses individual conduct or a broader policy question; [and] whether litigation would intrude on the function of other branches of government. . . ." *Bistrian*, 912 F.3d at 90. If there are special factors counseling hesitation, "a *Bivens* remedy will not be available." *Abbasi*, 582 U.S. at 136. The Supreme Court has made clear that lower courts must exercise caution and restraint before permitting claims that present even a modest extension of *Bivens*.

      The Court understands Braxton to raise a host of constitutional claims challenging the conditions in which he was confined as a convicted prisoner, *i.e.*, claims based on his missing property, claims for excessive force when he was maced, and claims based on uncomfortable bedding and unsanitary conditions during meals. As an initial matter, his claims against the sole defendant named in the caption of the Complaint, FDCP, fails because *Bivens* claims may not be brought against federal agencies. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 486-87 (1994) (refusing to extend *Bivens* claim to federal agency defendant); *see also Hindes v. F.D.I.C.*, 137 F.3d 148, 158-59 (3d Cir. 1998) (federal governmental entities are not "persons" subject to suit in a federal civil rights matter); *Mark v. Patton*, No. 14-1623, 2014 WL 6973495, at *4 (E.D. Pa. Dec. 9, 2014) (dismissing *Bivens* claim against FDCP because "*Bivens* cannot be pursued directly against federal agencies"), *aff'd*, 696 F. App'x 579 (3d Cir. 2017). Even liberally construing the Complaint as *Bivens* claims against the United States since FDCP is an agency of the United States through the Bureau of Prisons ("BOP"), such claims are "barred by sovereign immunity,

absent an explicit waiver." *Lewal v. Ali,* 289 F. App'x 515, 516 (3d Cir. 2008) *(per curiam); see also Meyer,* 510 U.S. at 475 ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Brooks v. Bledsoe*, 682 F. App'x 164, 169 (3d Cir. 2017) (*per curiam*) ("To the extent that Brooks is suing the BOP employees in their official capacities, his claim fails as actions against prison officials in their official capacities are considered actions against the United States, and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."). As the United States has not waived its sovereign immunity, Braxton's claims against FDCP will be dismissed.

Although not listed in the caption, in raising his claims based on property loss, excessive force, and unpleasant conditions at FDCP, Braxton mentions an unidentified FDCP Assistant Warden, "a Mr. Tossle," and Case Manager Ms. Colon in the body of the Complaint. (Compl. at 1). Even if he had intended to assert *Bivens* claims against these federal actors, Braxton's claims would also fail because the Supreme Court has not previously recognized a *Bivens* remedy for a prisoner's claims based on the confiscation of personal property. *See Gedeon v. Att'y Gen.*, No. 22-3595, 2022 WL 7570749, at *6 (E.D. Pa. Oct. 12, 2022) (dismissing *Bivens* claim based on property loss because the Federal Tort Claims Act "provides all the process that is due"). Nor has a claim been recognized based on being provided with a substandard mattress or having to eat meals in unsanitary conditions. *See*, *e.g.*, *Blakey v. Pistro*, No. 21-572-JDW, 2021 WL 2312647, at *3 (E.D. Pa. June 7, 2021) (noting that at least one Court of Appeals has declined to extend *Bivens* to a claim asserting unsanitary cell conditions, *Schwarz v. Meinberg*, 761 F. App'x 732, 734 (9th Cir. 2019) (claim based on nonfunctioning toilet not viable under *Bivens*), and that the Third Circuit has declined to extend *Bivens* remedies to a non-medical Eighth Amendment claim, *Mammana v. Barben*, No. 20-2365, 2021 WL 2026847, at *4 (3d Cir. May 21, 2021).

Finally, the Supreme Court has specifically rejected extending *Bivens* to cover an excessive force claim. *Egbert*, 596 U.S. at 493-94 ("Applying the foregoing principles, the Court of Appeals plainly erred when it created causes of action for Boule's Fourth Amendment excessive-force claim"). In other words, the excessive force claim is clearly barred and the other claims would constitute an extension of *Bivens* liability.

The Court declines to recognize an extension of *Bivens* to cover a seizure of property claim or an Eighth Amendment claim based on a substandard mattress and unsanitary conditions based on a "special factors" analysis. First, the BOP's Administrative Remedy Program provides a remedy for a prisoner's loss of property and conditions of confinement claims, which mitigates against inferring a new *Bivens* cause of action. Indeed, the United States Court of Appeals for the Third Circuit has held that the existence of the BOP's Administrative Remedy Program "precludes a *Bivens* remedy." *Fisher*, 115 F.4th at 208. Additionally, the Federal Tort Claims Act "provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of government officials." *Velazquez v. Zickefoose*, No. 11-2459, 2011 WL 6339187, at *6 (D.N.J. Dec. 19, 2011). Although the Third Circuit has not yet spoken precedentially in this specific context, courts in this Circuit have found that a prisoner cannot sustain a Fifth Amendment due process claim under *Bivens* in light of *Abbasi* and its progeny. *See, e.g., Cordova v. Garland*, No. 22-816, 2025 WL 19822, at *11 (M.D. Pa. Jan. 2, 2025); *Louis-El v. Ebbert*, 448 F. Supp. 3d 428, 441 (M.D. Pa. 2020) (declining to extent *Bivens* to inmate's Fifth Amendment claim based on "withholding of his personal property"); *Bossio v. Spaulding*, No. 20-1777, 2021 WL 4123975, at *4 (M.D. Pa. Sept. 9, 2021) ("[P]rison administration is a special factor precluding the extension of *Bivens* to Plaintiff's Fifth Amendment due process claim"). Because there are alternative remedies that Braxton could

utilize to seek relief for the loss of his personal property and conditions of confinement claims, they are not plausible and will be dismissed with prejudice.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Braxton leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court concludes that under the circumstances of this case, Braxton cannot cure the defects in his Complaint, so the dismissal will be with prejudice and he will not be given leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that complaints should be with leave to amend "unless amendment would be inequitable or futile").

An appropriate Order will be entered separately.  *See* Federal Rule of Civil Procedure 58(a).

        **BY THE COURT:**

        **/s/ John Milton Younge**
        **JOHN MILTON YOUNGE, J.**